**Commonwealth v. Ridgeway**

C.P. of Chester County, no. 3463-98.

*Daria T. LaTorre,* for Commonwealth.
*S. Lee Ruslander,* for defendant.

WOOD, *J.,* February 3, 1999—This fascinating case raises issues of constitutional import. Although the analysis is complicated, and the result not altogether satisfying logically, I conclude that I must rule against the defendant, and will not suppress the evidence.

On July 19, 1998, defendant William Ridgeway and Elizabeth Declet were living together in an apartment at 663 East Union Street, West Chester, Chester County, Pennsylvania. Elizabeth Declet was also the mother of three children, all girls, ages 9, 10, and 11, who lived at the same apartment. Ms. Declet paid the rent on the premises, and the lease was in her name. She and defendant shared a bedroom, and each had his or her own dresser in that bedroom.

On the date in question, Ms. Declet was putting some laundry away in one of the defendant's dresser drawers, and a videotape "fell out" in some fashion. The videotape appeared to be one of a set of eight that defendant and Ms. Declet had purchased, and Ms. Declet was aware prior to the discovery of this tape that one of the set was missing. She recognized the videotape that she found as one of the missing set because it was not like the normal VCR tapes in appearance.

She put the videotape in some sort of recorder in order to view it, out of curiosity, as she said. She watched the entire tape. She reports that it had two main sections

to it, and that in each section, various of her girls were shown in stages of undress, down to complete nudity.

Ms. Declet was, quite understandably, terribly upset, and she set out to find the defendant. When she couldn't find him, she returned to her home and called the police. An Officer McIntyre arrived and found her in a state bordering on hysteria. She calmed down long enough to tell Officer McIntyre that she had the tape, and she put it on the VCR for viewing. Officer McIntyre looked at about 30 seconds of it, and then instructed Ms. Declet to turn it off. He took the tape into custody, and later that evening passed it along to Detective Tom Yarnall of the West Chester Police Department. Detective Yarnall viewed the tape in its entirety, and determined that defendant should be arrested on charges of possession of child pornography, filming sexual acts, and illegally intercepting communications.

Defendant moves to suppress the tape, based on the following line of argument (as best I understand it): Defendant acknowledges that nothing constitutionally improper occurred when Ms. Declet took physical custody of the tape, and even when she watched it through to the end. Defendant also acknowledges that the police were entitled to take physical custody of the tape. However, he contends that the police *viewing* of the tape amounts to a search, and that since it was a search, and was done without the authority of a search warrant, further use of the tape must be suppressed.

The defendant refers me to *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In *Walter,* some pornographic material was sent through the mail and got misdirected. The pornographic material consisted of videotapes, and the unintended recipients realized right away from looking at the package that it

contained homoerotic material. They called in the FBI, who picked up the packages, opened them, and viewed the material. Following that, they made their arrests.

The United States Supreme Court decided that while the FBI agents legitimately took possession of the tapes, they should have obtained a search warrant before viewing them.

Both parties have referred me to *Commonwealth v. Kean,* 382 Pa. Super. 587, 556 A.2d 374 (1989). *Kean* was a case where a couple in their 60s had illicit sexual relations with young boys in their teens. Those acts took place in the older couple's bedroom. The boys managed to tape the sexual acts surreptitiously. As will happen with kids, the word got around that the boys had these tapes, and eventually the mother of one of them got her hands on them, and turned them over to the police.

The interesting thing about *Kean* is that Judge Beck, for the Superior Court, analyzes the situation in terms of whether the defendants' privacy had been invaded by having private acts which they committed in their bedroom bandied about and viewed by the police. In other words, she recognized that defendants had no right of privacy in the tapes, nor any standing to object to their viewing, *except* insofar as the subject of the tapes was acts done in the privacy of their bedroom. The case is difficult to follow, but as I read it, she decided that despite the unconstitutional intrusion, the tapes would not be suppressed because the lawful possessor of the tapes had consented to their being viewed.

Analytically, I view the situation in *Kean* differently than the situation in *Walter.* In *Kean,* the question was whether a couple had a privacy interest in not being photographed doing illegal sex acts in their own bedroom.

In *Walter,* the question was whether somebody who made tapes of sex acts for its shipment in the mails nonetheless retained a privacy interest in not having those tapes viewed by unintended recipients. In other words, in *Kean,* the question was whether to suppress the tapes because the defendants themselves were portrayed doing illegal acts in a private place. In *Walter,* the question was whether privacy attached to objects placed in the mails which portrayed others doing illegal acts.

If these were the only two cases that were applicable, I think I would be inclined to side with the defendant and say that the viewing by the police was improper, based on the United States Supreme Court decision in *Walter.* However, a few years after *Walter* was decided, the Supreme Court was confronted with *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In *Jacobsen,* the employees of a private freight carrier observed a white powdery substance in the innermost of a series of four plastic bags that had been concealed inside a damaged cardboard box which the carrier was transporting. The carrier notified the appropriate drug enforcement personnel, who came and gathered up the box with the bags and powder inside. They removed the trace of the powder and subjected it to a chemical test, and determined that it was cocaine. They then obtained search warrants and went out and made arrests. The court decided that the warrantless test of the white powder did not require that the evidence be suppressed. Since the private carrier employee had already seen the powder, defendant no longer had a protectable expectation of privacy, and the subsequent seizure and viewing by the DEA was permissible.

During the course of that decision, Justice Stevens had occasion to consider the *Walter* case. He decided that

the *Walter* evidence had to be suppressed because there had been no private viewing of the tapes before the FBI viewed them. In other words, if there had been a private viewing of the tapes, then at that point the defendant's expectation of privacy would have been extinguished, and the FBI would have been free to examine the tapes themselves. The analysis of *Walter* and the holding in *Jacobsen* indicated that once a private person violates another's right of privacy, the government may do the same thing, as long as it does not exceed the bounds of the original private search.

That appears to be what happened here. Ms. Declet had viewed the entire tape, so, consistent with *Jacobsen,* it was legitimate for the police to view the entire tape as well.

In *Kean,* Judge Beck suggested that the Pennsylvania Supreme Court in *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979) took a more limited view of government authority to search than the U.S. Supreme Court later did in *Jacobsen. DeJohn* was a case involving bank records, and I don't read it as affecting the viewing of videotapes involved here. Indeed, insofar as *Kean* allows a third party to consent to the viewing of a private tape, it supports my conclusion.

## ORDER

And now, February 3, 1999, based on the foregoing reasoning, the defendant's motion to suppress is denied.